.      UNITED STATES OF AMERICA
       UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF MICHIGAN


CORNELIUS HOLLIS,

        Plaintiff,        Case No. 1:08-cv-633

v.        Hon. Robert J. Jonker

WILLIE O. SMITH, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 37).

    **I.**    **Plaintiff's amended complaint**

Plaintiff's claims arise from acts that occurred at the Ionia Maximum Correctional Facility (ICF). He names the following defendants: Warden Willie O. Smith; Deputy Warden Nannette Norwood; Grievance Coordinator Nancy Klinesmith; Assistant Resident Unit Supervisor (ARUS) Darrell Kelley; and storekeeper Maggie Olsen.

Plaintiff sets forth the following allegations. Plaintiff worked as a prison store clerk in November 2007. At that time, he confronted storekeeper Olsen "about her unlawful conduct of misappropriating prisoners' funds," i.e., stealing food, hygiene products, cigarettes and chewing tobacco, and providing those items to "various correctional staff without cost and at the expense of the inmate population." Amend. Compl. at ¶ 12. On December 5, 2007, plaintiff sent intramural correspondence to Warden Smith "notifying him of the unlawful acts" and "requesting an immediate investigation." *Id.* at ¶ 17. Plaintiff forwarded the correspondence to other individuals including

Deputy Warden Norwood. *Id.* at ¶ 18. No one responded to plaintiff's letter. *Id.* at ¶ 19. On December 17, 2007, while Warden Smith made his housing rounds, plaintiff spoke to him about the situation. *Id.* at ¶ 20. Warden Smith told plaintiff that he had not provided sufficient information to initiate an investigation, and suggested the possibility that prisoners, rather than prison staff, were stealing from the prison store. *Id.* at ¶ 21. Warden Smith also advised plaintiff that he was not a block representative and that he should not be alleging staff theft, because such allegations would result in some form of sanction. *Id.* at ¶ 22. Plaintiff told that warden that he had observed unlawful acts by storekeeper Olsen and other correctional staff and that he intended to notify the Michigan State Police. *Id.* at ¶ 23. Plaintiff believed that he could not file an administrative grievance regarding the theft of funds from the prison store. *Id.* at ¶ 24.

On December 14, 2007, storekeeper Olsen issued plaintiff a major misconduct for threatening behavior. *Id.* at ¶¶ 29-30. Olsen stated that plaintiff threatened to kill her the previous, while he was assigned to the prison store. *Id.* Plaintiff was handcuffed and escorted from his housing unit. *Id.* Plaintiff advised an investigator, Lieutenant Kula, that the misconduct was false and that Olsen had called him out to work at 5:00 a.m. on December 14th, the same day the misconduct ticket was written. *Id.* at ¶¶ 31-32. Plaintiff was later released from segregation and the misconduct dismissed. *Id.* at ¶¶ 33-34. After his release from segregation, plaintiff was harassed and threatened by correctional officer "John Doe" (not a defendant in this action). *Id.* at ¶¶ 35-36. Plaintiff reported this harassment to ARUS Kelley. *Id.* at ¶ 36.

Plaintiff believed that storekeeper Olsen fabricated the misconduct report in an attempt to remove him from the prisoner store and silence his accusations of her thefts from the store. *Id.* at ¶ 37. On December 16th, plaintiff initiated a grievance against storekeeper Olsen for

issuing a false misconduct report and requested that she be terminated from her employment. *Id.* at ¶ 38. On December 17th, Grievance Coordinator Klinesmith attempted to persuade him to "sign off" on the grievance, because Olsen could lose her job. *Id.* at ¶¶ 39-40. Klinesmith then offered to transfer plaintiff "anywhere if he liked." *Id.* at ¶ 41. A few days later, storekeeper Olsen stated to plaintiff, "Since you want to file grievances against me and write kites complaining about what's on in my Department, lets see how long you stay at this facility; so enjoy your stay because it won't be long." *Id.* at ¶ 43.

Sometime later, plaintiff was summoned to the ICF Control Center, where Captain "John Doe" (not a defendant in this action) told plaintiff to steer clear of Olsen and said he would "lock plaintiff up himself" if he believed plaintiff was threatening staff. *Id.* at ¶ 44. An "unknown officer" (not a defendant in this action) accosted plaintiff as he left the Control Center, ordered plaintiff to submit to a shake down and then questioned plaintiff about Olsen. *Id.* at ¶ 45. The unknown officer told plaintiff that Olsen was a good friend and indicated that plaintiff "had better stay out of the way" or he would have problems. *Id.* at ¶ 46. Plaintiff spoke with ARUS Kelley again, but Kelley was tired of plaintiff complaining about Olsen and told him that "some wars are not meant to be fought." *Id.* at ¶ 48. ARUS Kelley then told plaintiff that he was crazy and was not going to get anybody fired. *Id.* at ¶ 50.

Two days after plaintiff filed his grievance against Olsen, Deputy Warden Norwood entered plaintiff's name as a candidate for transfer "at the behest of Defendant Klinesmith." *Id.* at ¶ 53. Plaintiff did not request a transfer, having only been at ICF for about 82 days. *Id.* at ¶ 54. According to the MDOC Security Classification Screening Review, Deputy Warden Norwood entered a request for the transfer on December 18, 2007. *Id.* at ¶ 56. The order was prepared on

January 10, 2008 and plaintiff was transferred from ICF on January 16, 2008. *Id.* According to plaintiff, this chain of events "clearly shows that Plaintiff was selected for transfer not by Transfer Coordinator Foy by rather by Defendants Kelley, Norwood and Klinesmith." *Id.* Plaintiff claims that due to the malice and retaliation of defendants, he was transferred to a different facility, which resulted in the loss of a "high paying job position" and "lost contact" with family members and his attorney. *Id.* at ¶ 58.

Plaintiff sets forth the following causes of action. Defendant Olsen violated plaintiff's Fourteenth Amendment due process rights by issuing a false misconduct report. Olsen also retaliated against him for engaging in his First Amendment right to "redress the government for an alleged wrong." Defendants Norwood, Klinesmith, Olsen, Kelley and Smith instituted a retaliatory transfer because plaintiff exercised his First Amendment right to redress the government. Plaintiff seeks injunctive relief, including returning him to an MDOC institution "that is within reasonable distance of family and attorney visits" and enjoining defendants from performing future acts like those complained of in this action. Plaintiff also seeks compensatory and punitive damages against each defendant.

## II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

4

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Defendants' motion for summary judgment

### A. Lack of Exhaustion

Defendants Smith, Norwood, Kelley and Klinesmith move for summary judgment for lack of exhaustion. The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (eff. July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

The record reflects that plaintiff exhausted two grievances that relate to the alleged incidents. *See* James Armstrong Aff. and attachments (docket no. 38-6). In grievance ICF 2007-12-2529-17A (grievance no. "2529"), dated December 16, 2007, plaintiff alleged that Olsen wrote a false misconduct against him. *Id.* Olsen is the only defendant named in this grievance. *Id.* Grievance no. 2529 was ultimately denied at Step III. *Id.* In grievance ICF 2007-01-0216-24B (grievance no. "216"), dated January 22, 2008, plaintiff alleged that he was subjected to a retaliatory transfer for filing grievances against Olsen. *Id.* Grievance no. 216 was rejected as raising a non-grievable issue, i.e., because plaintiff attempted to grieve "the content of Department-wide policy" related to prisoner placement and transfer (MDOC Policy Directive 05.01.140) and prisoner security classification (MDOC Policy Directive 05.01.130). *Id.* The rejection of the grievance was upheld at Step II. *Id.* The grievance was denied at Step III, finding that staff properly responded to the grievance. *Id.*

Plaintiff's grievances did not name Warden Smith, Deputy Warden Norwood, Grievance Coordinator Klinesmith or ARUS Kelley as required by PD 03.02.130 ¶ R. Because plaintiff failed to name these four defendants, he has failed to properly exhaust this grievance against them as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

7

Accordingly, defendants Warden Smith, Deputy Warden Norwood, Grievance Coordinator Klinesmith and ARUS Kelley are entitled to summary judgment for lack of exhaustion.

**B.     Retaliation**

Plaintiff alleged that Olsen acted in concert with the other defendants to transfer plaintiff in retaliation for filing a grievance against Olsen. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977).

As an initial matter, plaintiff's transfer to a different correctional facility was not an adverse action for purposes of a First Amendment retaliation claim. "A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Jewell v. Leroux*, 20 Fed. Appx. 375, 378 (6th Cir. 2001). *See, e.g., Burton v. Houseworth*, No. 90-2096, 1991 WL 105756 at *2 (6th Cir. June 14, 1991) (rejecting a Michigan prisoner's claim for retaliatory transfer because prisoners do not have a constitutional or state-created right to be incarcerated at a particular facility). A prisoner has no constitutional right to be confined in a particular institution or to enjoy a certain classification.

*See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("[w]hatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all").

Furthermore, in order to state a retaliation claim, plaintiff must show that Olsen had the ability and authority to take "adverse action" against him. *See Smith v. Campbell*, 250 F.3d 1031, 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). Stated another way, "[u]nder the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. Transfer orders must be approved by the Warden of the facility with the final approval of the MDOC Central Office. Warden Smith Aff. at ¶ 10 and attached Transfer Order (docket no. 38-5). Olsen, as a storekeeper, did not have authority to transfer prisoners. Olsen Aff. at ¶ 7 (docket no. 38-4). For this reason, Olsen could not order his transfer as a retaliatory measure. Accordingly, plaintiff has no federal constitutional claim against storekeeper Olsen for his alleged retaliatory transfer.

**C.     Due Process**

Plaintiff alleged that Olsen violated his due process rights by issuing a false misconduct charge. The Fourteenth Amendment provides that a person may not be deprived of "life, liberty, or property, without due process of law." Plaintiff does not claim that Olsen deprived him of any procedural due process. Rather, plaintiff appears to assert a substantive due process claim.

9

> The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process. These limitations are meant to provide heightened protection against government interference with certain fundamental rights and liberty interests.

*Grinter v. Knight*, 532 F.3d 567, 572-73 (6th Cir. 2008) (citations and internal quotation marks omitted).

However, "[A] prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 Fed. Appx. 131, 132 (6th Cir. 2003), citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986) (holding that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"). *See, e.g., Whiteside v. Collins*, No. 2:08-cv-875, 2009 WL 4281443 at *12 fn 14 (S.D. Ohio Nov. 24, 2009) (rejecting prisoner's substantive due process claim arising from alleged falsified reports, citing *Hamlin* and *Freeman*). Accordingly, Olsen is entitled to summary judgment on this claim.[1]

---

[1] Defendants also seek summary judgment on grounds of qualified immunity and Eleventh Amendment immunity. Because plaintiff has failed to establish a federal constitutional violation, it is unnecessary for the court to address the issue of immunity. *See Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007) ("If there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity.")

### IV. Recommendation

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket no. 37) be **GRANTED** and this action dismissed.


Dated: January 20, 2010				/s/ Hugh W. Brenneman, Jr.
						HUGH W. BRENNEMAN, JR.
						United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).